**SEA HUNT, INC., Plaintiff,**

v.

**The UNIDENTIFIED, SHIPWRECKED VESSEL OR VESSELS, etc. *in rem*., Defendant.**

**CIV. A. No. 2:98CV281.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Sept. 23, 1998.

Anthony F. Troy, Mays & Valentine, Richmond, VA, David Kegebein Sutelan, Mays & Valentine, Norfolk, VA, Peter E. Hess, Wilmington, DE, David J. Bederman, Emory University School of Law, Gambrell Hall, Atlanta, GA, for Plaintiff/Counter–Defendant.

Frederick Schilling Fisher, Office of the Attorney General, Roger L. Chaffe, Richmond, VA, for Commonwealth of Virginia Intervenor–Plaintiff.

Damon C. Miller, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, Lawrence R. Leonard, Office of the U.S. Attorney, Norfolk, VA, Caroline M. Blanco, U.S. Department of Justice, Environment & Natural Resources Div., Barbara B. O'Malley, Department of Justice, Torts Branch, Civil Division, Washington, DC, for Intervenor–Plaintiff U.S. and Claimant–Spain.

George Robert Leach, Williamsburg, VA, for Claimants Alpha Quest Corp. and Richard L. Cook.

## OPINION AND ORDER

CLARKE, District Judge.

The parties come before the Court on the motion of Sea Hunt, Inc. ("Plaintiff") to strike and dismiss the United States' Motion to Intervene as to its Regulatory Authority, pursuant to Federal Rule of Civil Procedure 24, Supplemental Admiralty Rule (C)(6), and Local Admiralty Rules (e)(3) and (e)(13). For the reasons set forth below, the Court GRANTS the motion.

### I.

By Order of March 12, 1998, this Court issued a warrant for the arrest of the defendant vessel(s), granted Plaintiff the exclusive right to salvage the vessels, allowed sixty (60) days within which potential claimants could file claims to the vessels, and allowed twenty (20) days thereafter for parties to file answers.

On March 21, 1998, Notice of the Admiralty Arrest of the Shipwrecked Vessel(s) and Entry of Preliminary Injunction was published in the Virginian Pilot, in accordance with S.A.R. C(4) and L.A.R.(c)(3).

The United States of America ("United States") responded timely by filing, on its own behalf, a Motion to Intervene to assert its authority to regulate the activities on the waters off the shore of Assateague Island where the sunken vessels are allegedly located. By Order of July 14, 1998, this Court denied the United States' motion on procedural grounds, but allowed the United States ten (10) days within which to file a proper motion to intervene. On July 22, 1998, the United States filed a Renewed Motion to Intervene to defend its regulatory authority over navigable waters. Plaintiff now contends that the United States' renewed motion should be dismissed because the motion is unverified and in violation of Federal Rule of Civil Procedure 24, Supplemental Admiralty Rule (C)(6), and Local Admiralty Rules (e)(3) and (e)(13).

### II.

Although Plaintiff brings this motion based on alleged procedural deficiencies, the Court does not decide whether the United States should have complied with the cited Admiralty rules because as a threshold matter, the Court FINDS that the United States has not met the necessary requirements either for intervention as of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(2).

### A.

■ A person or entity seeking intervention as a matter of right must show three things: (i) an interest in the subject matter of the suit; (ii) that the protection of this interest would be impaired because of the suit; (iii) that the intervenor's interest is not adequately represented by existing parties to the litigation. *Teague v. Bakker*, 931 F.2d 259, 260 (4th Cir.1991) (citing *Virginia v.*

*Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir.1976)).

■ Since the United States has failed to show an interest in the subject matter of this *in rem* action, it has failed to meet the requirements for intervention as of right.

The Plaintiff has called upon this Court to determine only the rights of ownership and the rights of salvage of the sunken vessels, nothing more. The subject matter of this action, therefore, is the sunken vessels lying off the shore of Assateague Island. The United States has made it clear to the Court that it has no interest in asserting a claim against those vessels. On brief and in oral argument, the United States has argued repeatedly that it does not seek to assert any claim of ownership or salvage rights against the sunken vessels, stating explicitly that "the [National Park System] does not seek to assert any claim whatsoever over the subject vessels or their property." Memorandum in Opposition to Motion to Strike and Dismiss at 5.

The United States argues, rather, that it has a right to intervene because the Plaintiff has included in its Verified Complaint a prayer for declaratory relief that, according to the United States, implicates the United States' interest in regulating boating activity on the navigable waters above the location of the sunken ships. The United States asserts that it has a right to intervene in order to protect this interest.

This might be so if the Plaintiff's prayer for a declaratory judgment implicated the same interest that the United States wishes to defend. It does not. The language of the prayer for declaratory relief reads, in pertinent part, as follows:

> ... (b)...that no other government other than the Commonwealth of Virginia— whether the United States or any foreign sovereign— has the jurisdiction or authority to issue any permit for the exploration for and/or recovery of the Shipwrecked Vessel(s) or to grant, condition or deny the right of any Commonwealth permittee to do so within the territorial waters of the Commonwealth...

*Verified Complaint In Admiralty In Rem* at 9.

The language employed by the Plaintiff asks the Court to determine which government agency has the exclusive right to decide which salvor will be permitted to explore and salvage the sunken vessels. The Plaintiff is not, as the Court understands it, seeking a declaration that the United States is without authority to regulate the surface activities and uses of the navigable waters where the vessels are located. Therefore, the United States, claiming to have no interest in who will or will not be allowed to salvage the vessels, has no interest to protect with regard to the Plaintiff's prayer for a declaratory judgment. Since this *in rem* action concerns only the issues of ownership and salvage rights, and the United States concedes that as far as its regulatory claim is concerned, it has no interest in either of those issues, the United States may not intervene as of right under F.R. Civ. P. 24(a)(2).

### B.

Under the same reasoning set forth above, the United States may not intervene in this case under the Federal Rules' provision for permissive intervention. F.R. Civ. P. 24(b)(2). The United States' interests in enforcing boating regulations are entirely separate and apart from the ownership and salvage interests that form the basis of this action. There are simply no questions of law or fact in common and therefore permissive intervention is not proper either.

### III.

The Court's conclusion that the United States has no interest in the subject matter of this suit and may not intervene should not be construed to mean that the United States has no interest either in regulating the boating activities of the Plaintiff or anyone else, or in preventing obstructions to navigation on the waters over the sunken vessels in question.

It is well settled law that "Congress has extensive authority over this Nation's waters under the Commerce Clause. Early in our

history [the Supreme Court] held that the power to regulate commerce necessarily includes power over navigation." *Kaiser Aetna v. United States,* 444 U.S. 164, 173, 100 S.Ct. 383, 389, 62 L.Ed.2d 332 (1979) citing *Gibbons v. Ogden,* 9 Wheat. 1, 189, 6 L.Ed. 23 (1824). The Supreme Court has more fully explained the breadth of this power to control navigation by stating that, "[t]he states possess control of waters within their borders, 'subject to the acknowledged jurisdiction of the United States under the constitution in regard to commerce and the navigation of the waters of rivers.'" *United States v. Appalachian Electric Power Co.,* 311 U.S. 377, 405, 61 S.Ct. 291, 298, 85 L.Ed. 243 (1941)(citing *St. Anthony Falls Water Power Co. v. Water Commissioners,* 168 U.S. 349, 366, 18 S.Ct. 157, 164, 42 L.Ed. 497 (1897)). Congress, of course, may delegate this power to regulate navigation to the federal government agencies it chooses. In this case, Congress has delegated its regulatory authority over the waters off Assateague Island to the National Park System *through creation of the Assateague Island National Seashore.* 16 U.S.C.A. § 459f, *et seq.*

At this time, actual ownership of the sunken vessels has not been determined. Actual ownership of the vessels, however, is irrelevant to the existence of the United States' power to regulate the boating activities and obstructions on the surface navigable waters above the sunken vessels. Even if the Court were ultimately to decide, though it does not do so now, that the Commonwealth of Virginia actually owns the sunken vessels, such a decision would not change the fact that the United States has the power to regulate activities on the navigable waters above the sunken vessel. Congress has retained its plenary authority over navigation of these navigable waters under the Commerce Clause. Just as in cases involving the Property Clause, this authority is unaffected by the fact that the United States may have ceded to the Commonwealth of Virginia ownership of lands three miles seaward from the state or ownership of abandoned shipwrecks within those three miles. *See, e.g., United States v. Brown,* 552 F.2d 817 (8th Cir.1977), *cert. denied,* 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977) (under Property Clause, Congress can regulate waters beyond territorial limits of United States' actual ownership)

## IV.

Finally, the Court FINDS that the injunction currently in place does not affect the power of the United States to regulate its navigable waters. Since the Court has found that the United States cannot properly intervene in this particular proceeding either to assert or defend its regulatory interest, the question of whether the United States complied with the procedural mandates is moot. Furthermore, the United States' motion to modify the preliminary injunction is likewise moot.

The Court notes that its decision that the United States may not intervene in this case on its own behalf does not render the United States unable to protect its interests in regulating the navigable waters in question. If the United States government finds that the Plaintiff or any other party who might intervene and establish a salvage right to the vessels is interfering with or affecting navigation around the site of the sunken vessels, then the United States may take appropriate legal steps at that time to require the salvor to cease such activity and comply with the United States' regulations.

## V.

For the foregoing reasons, the Plaintiff's Motion to Dismiss the United States of America is GRANTED and the United States of America's Motion to Intervene as to Its Regulatory Authority is DISMISSED.

The Clerk is DIRECTED to mail a copy of this ORDER to counsel for Plaintiff, counsel for the United States, and the attorneys who contend that they are representing the Kingdom of Spain.

IT IS SO ORDERED.